UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BILLY DALLMAN,<br><br>                    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | No.   2:15-CV-0318-SMJ<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION** |

## I.   INTRODUCTION

Plaintiff Billy Dallman appeals the Administrative Law Judge's (ALJ) denial of his application for supplemental security income. ECF No. 3. Plaintiff contends the Court should reverse the ALJ's decision because the ALJ improperly (1) found that Dallman's back pain did not constitute a severe impairment, (2) rejected Dallman's testimony concerning the severity of his symptoms, and (3) discounted the opinion of two treatment providers. The Commissioner of Social Security asks the Court to affirm the ALJ's decision. After reviewing the record and relevant authority, as set forth below, the Court finds that the ALJ applied the proper legal standards and the ALJ's decision is supported by substantial

ORDER **-** 1

evidence. Accordingly, the Court affirms the ALJ's decision and therefore denies Plaintiff's motion and grants the Commissioner's motion

## II.   BACKGROUND

**A.   Statement of Facts[1]**

Plaintiff Billy Dallman was born on December 26, 1974, and was 37 years old at the time he filed his claim. AR 63. At the time he filed his claim, Dallman was a resident of Ellensburg, Washington, where he lived with his wife and three children. AR 42. Dallman has not worked consistently since 2001. AR 189, 223. He alleges that he has been unable to work since that time because of bipolar disorder, post-traumatic stress disorder, back injuries, knee injuries, and thyroid disorder. AR 19, 63, 188.

Dallman has a long history of physical and mental conditions. Dallman reported significant childhood abuse and trauma, and also drug and alcohol use beginning at a very young age. AR 326–27. Dallman did not complete high school and does not have a GED. AR 47. Dallman reports having knee pain since surgery in the early 1990s that has worsened over time, and back pain since an injury in 2002. AR 204, 214, 414–15, 428. Dallman was diagnosed with hyperthyroidism in January 2006. AR 413. Dallman has been hospitalized for psychiatric illness on

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

two occasions: In July 2009, after being found naked on his neighbor's deck and punching and choking his girlfriend in response to command auditory hallucinations; and in May 2012, after making claims to a mental health professional that, among other things, he was god, he was 2012 years, and he would take care of all of the evil in the world. AR 247. At discharge in May 2012, he was diagnosed with severe bipolar disorder with psychotic features. AR 245. At the time of this application Dallman was taking a number of medications including: Cogentin, for side effects from anti-psychotic medications; Depakote, for depression and bi-polar disorder; Hydrocodone, for pain; Levoxyl, because his thyroid was removed; Meloxicam, for arthritis and joint pain; Methocaramol, for muscle spasms; and Risperdal, for bi-polar disorder. AR 218–19.

Dallman reports that on a day-to-day basis, he drinks coffee, takes care of his children, and eats meals. AR 205. He reports requiring reminders to do routine personal care and take his medications. AR 206. He does light housework and occasionally makes simple meals. AR 206. Dallman attends counseling once per week. AR 209. Dallman asserts that the pain in his back and knees make sitting, standing and lifting difficult, and that his mental disorders cause him to be anxious and avoid social interactions. AR 204, 209.

ORDER **-** 3

## B. Procedural History

On June 11, 2012, Dallman filed an application for supplemental security income, alleging an inability to work since January 2002 as a result of bipolar disorder, post-traumatic stress disorder, back injury, knee injury, and thyroid disorder. AR 19, 171. This application was denied on July 17, 2012, and denied on reconsideration on October 31, 2012. AR 19, 74, 88. Dallman filed a request for a hearing on December 6, 2012. AR 19. A hearing occurred before an ALJ on April 23, 2014. AR 19. On June 20, 2014, the ALJ issued a decision finding Dallman not disabled and denying his claim for supplemental security income. AR 19–31. On August 20, 2014, Dallman requested review by the Social Security Administration Appeals Council, asserting that the ALJ's decision was not supported by substantial evidence, the decision contained legal errors, and the ALJ's credibility determination was legally insufficient. AR 14. The Council denied Dallman's request on September 17, 2014. AR 1–5. Dallman filed this action on November 17, 2015. ECF No. 1.

## II. DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the

claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER **-** 6

### III. Standard of Review

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1111 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* (citation omitted). Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

### IV. Discussion

Dallman challenges the ALJ's decision on three grounds. First, he argues that at step two the ALJ erred by finding that Dallman's chronic back pain was not a severe impairment. Second, he argues that the ALJ erred by rejecting Dallman's testimony concerning the severity of his symptoms. Third, he argues that the ALJ improperly weighed certain medical opinions. As discussed below, the ALJ did

ORDER **-** 7

not commit legal error and each of the challenged findings is supported by substantial evidence. Accordingly, the ALJ's decision must be upheld.

**A.    The ALJ did not err at step two by finding Dallman's chronic back pain was not a severe impairment.**

An impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 CFR §§404.1521, 416.921. Dallman argues that the ALJ arbitrarily chose to reject nurse practitioner Mara Fusfield's opinion and improperly rejected Dallman's own symptom testimony. ECF No. 12 at 7. In concluding that Dallman's back pain was not a severe impairment, the ALJ relied on x-rays from 2012, which showed only mild findings, and the conclusions of state medical consultant Dr. Robert Hoskins, who indicated that Dallman had a severe impairment related to joint dysfunction, but no severe impairment related to a spine disorder. AR 22. The ALJ discounted the conclusion of Dallman's treating physician in 2006 that Dallman had chronic back pain on the basis that the conclusion was made well before the relevant period, and was inconsistent with x-ray evidence. AR 22. The ALJ's findings are supported by evidence in the record. Among other things, x-rays showed only mild spondylithosis in Dallman's back, AR 282, and physical exams revealed no significant abnormalities. *See* AR 257. Further, as discussed below, the ALJ gave sufficient reasons, supported by substantial evidence for giving little weight to Dallman's symptom testimony.

ORDER **-** 8

Accordingly, the ALJ's finding that Dallman's chronic back pain did not constitute a severe impairment is supported by substantial evidence.

**B.    The ALJ did not err by rejecting Dallman's testimony concerning the severity of his symptoms.**

Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of his symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). ALJs may consider many factors in weighing a claimant's credibility, including prior inconsistent statements, unexplained failures to seek treatment, and claimant's daily activities, among others. *Tommasetti*, 533 F.3d at 1039. Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

Dallman first argues that it was legal error for the ALJ to make any credibility determination because recent Social Security Administrative policy directs ALJ's not to "assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." ECF No. 12 at 8 (quoting Social Security Ruling (SSR) 16-3p). But SSR 16-3p did not take effect

ORDER - 9

until after the ALJ's decision in this case, *See* 2016 WL 1237954 (Mar. 28, 2016). And, in any case, there is no indication here that the ALJ assessed Dallman's overall character. Instead, the ALJ evaluated the consistency of Dallman's testimony with the objective evidence in the record, as required by the relevant regulations, *See* 20 C.F.R. § 416.929(c). AR 21–29.

Alternatively, Dallman argues that the ALJ erred by rejecting Dallman's allegations concerning specific symptoms. ECF No. 12 at 9–16.

First, Dallman argues that the ALJ erred by finding that Dallman was less than forthright about his need for surgery because his treating provider, Ms. Fusfield, indicated that neurosurgery was a recommended treatment for his physical conditions. ECF No. 12 at 9. Ms. Fusfield did note "poss[ible] referral to neurosurgery" as part of a treatment plan to address Dallman's back pain. AR 452. Accordingly, the ALJ's finding that "Ms. Fusfield's treatment notes do not mention the need for a surgery" is erroneous. However, this error is harmless because substantial evidence supports the ALJ's ultimate conclusion that Dallman was "less than fully forthright with his treating providers," including by inconsistently reporting the nature of his conditions and recommended treatment. AR 25. Specifically, Dallman's claim that Ms. Fusfield had recommended back and knee surgery and that if he did not get surgery he would be confined to a

wheelchair, is not consistent with Ms. Fusfield's recommendation or any other medical opinion or treatment evidence.

Dallman next asserts that the ALJ failed to consider that Dallman's failure to follow treatment recommendations may have been a symptom of his mental conditions. ECF No. 12 at 9–10, 12–13. But the ALJ's finding that Dallman did not always follow through with treatment is supported by the record, and the ALJ's conclusion that this weighed against the credibility of Dallman's allegations is consistent with the policy articulated in Social Security Ruling 96-7, which was in effect at the time of the ALJ's decision. Further, the ALJ expressly considered Dallman's explanation that he stopped taking his medications during manic phases, noting that evidence in the record was inconsistent with this claim. AR 27.

Dallman also questions the ALJ's finding that there were only "minimal and mild physical exam findings found throughout the record," arguing that the ALJ reached this conclusion by improperly ignoring and cherry-picking evidence. ECF No. 12 at 10–11. There is no indication that the ALJ improperly ignored evidence in reaching this conclusion. Dallman's physical examinations, x-rays, and course of treatment are sufficient to support the ALJ's conclusion that Dallman's allegations of the severity of his pain were inconsistent with the objective evidence.

ORDER - 11

Dallman asserts that the ALJ ignored treatment notes from the day after Dallman was released from the hospital in May 2012, which showed far more than "mild abnormalities." ECF No. 12 at 11–12. Dallman further challenges the ALJ's reliance on Dalman's improvement noted by healthcare providers without recognizing that the providers continued to opine that Dallman was severely disabled, with Global Assessment of Functioning (GAF) scores never exceeding 48. ECF No. 12 at 14. The ALJ does not specifically address treatment notes from the day following his discharge in May 2012 that suggest some continued paranoid delusions or Dallman's GAF scores. But neither of these factors undermine the ALJ's conclusion that Dallman's allegations concerning the severity of his psychiatric symptoms are inconsistent with medical opinions, treatment notes, and course of treatment that demonstrate normal or only mildly abnormal psychiatric observations when Dallman was taking his medications. AR 26. Extensive evidence supports this finding. *See* AR 257, 350, 352, 396, 476.

Finally, Dallman argues that his activities of daily living are consistent with his alleged limitations. ECF No. 12 at 15. The record supports the ALJ's finding that Dallman helps to care for his children, prepares simple meals, drives, and engages in other activities. AR 205–06. And the ALJ reasonably concluded that these activities are inconsistent with severely limiting symptoms.

**C.    The ALJ did not improperly weigh medical evidence.**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Moreover, an ALJ may afford greater weight to the opinion of a non-examining expert who testifies at a hearing and is subject to cross-examination. *Id.* at 1042 (citations omitted).

Dallman argues that the ALJ erred by giving little weight to nurse practitioner Mara Fusfield's August 2012 opinion, despite her role as treating provider. ECF No. 12 at 16–17. Dallman also argues that the ALJ erroneously rejected Mr. Wenger's opinion of disability. ECF No. 12 at 17. Noting that the ALJ incorrectly found that Wenger did not consider that Mr. Dallman was more functional on medication, when Wenger explicitly noted improvement as a result of treatment. ECF NO. 12 at 17; AR 457–58.

The ALJ gave little weight to Ms. Fusfield's opinion, despite her status as a treating source because she relied on Dallman's subjective statements (which the

ALJ had found not credible), her opinion was equivocal regarding Dallman's ability to respond to stressful situations, and that her findings were inconsistent with objective physical examination and x-ray evidence. AR 28. Each of these bases for discounting Ms. Fusfield's opinion is supported by substantial evidence. The ALJ discounted therapist Brett Wenger's opinion because Mr. Wenger was not a medical source, and because his opinion was inconsistent with treatment records and observations demonstrating Dallman's improvement while on medication. AR 29. As discussed above, the ALJ's conclusions regarding the severity of Dallman's mental condition and his improvement while on medication are supported.

Because the ALJ gave specific, legitimate reasons for giving little weight to Ms. Fusfield's and Mr. Wagner's opinions, there is no basis for the Court to reject the ALJ's decision.

**D.     Conclusion**

For the reasons discussed, the Court finds that the ALJ applied the correct legal standards and that the ALJ's conclusion that Billy Dallman does not qualify for benefits is supported by substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

**1.**     Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

**2.** The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

**3.** **JUDGMENT** is to be entered in the Commissioner's favor.

**4.** The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 3rd day of February 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 15